FLAMBEAU RIVER LUMBER COMPANY, Appellant, vs. RAILROAD COMMISSION OF WISCONSIN and another, Respondents.

*January 9—February 5, 1929.*

For the appellant there was a brief by *Quarles, Spence & Quarles* of Milwaukee and *J. W. Carow* of Ladysmith, attorneys, and *J. V. Quarles* of Milwaukee, of counsel, and oral argument by *J. V. Quarles.*

For the respondent Railroad Commission there was a brief by the *Attorney General* and *Suel O. Arnold,* assistant attorney general, and oral argument by *Mr. Arnold.*

For the respondent Chippewa and Flambeau Improvement Company there was a brief by *Bundy, Beach & Holland* of Eau Claire, attorneys, and *R. M. Campbell* of Chicago and *P. M. Beach* of Eau Claire, of counsel, and oral argument by *Mr. Beach.*

The following opinion was filed February 5, 1929:

OWEN, J. The complaint alleges that the plaintiff is now and has been for many years the owner of a sawmill on the Flambeau river, located at Ladysmith; that said sawmill in times past has been largely operated upon logs brought to it

by floating the same down the Flambeau river; that during the years 1925–26 the plaintiff cut a large quantity of logs on the Flambeau river and its tributaries above said mill with a view of floating the same down said river to said mill; that the defendant had constructed a series of dams on said Flambeau river and its tributaries above said mill and above where said logs were cut, by the operation of which during said years of 1925–26 it held back the natural flow of said streams so that plaintiff was unable to float its logs down to its said sawmill, to its great damage, and that the closing of the gates of said dams and the withholding of the water was done without any authorization, regulation, order, or approval of the Railroad Commission of the state of Wisconsin, and without notification to this plaintiff or any other persons navigating said river. The plaintiff demands judgment for the damages sustained by reason of its inability to float its logs to said mill during said years, and for an injunction restraining the withholding of said waters in said manner in the future. A demurrer to this complaint was sustained.

While it is not so alleged in the complaint, we take judicial notice of the fact that the Chippewa and Flambeau Improvement Company, by ch. 640, Laws of 1911, was authorized "to construct, acquire, maintain, and operate a system of water reservoirs located on the headwaters of the Chippewa and Flambeau rivers and their tributaries," which said authority was granted "for the purpose of producing as nearly a uniform flow of water as practicable in the Chippewa and Flambeau rivers, through all seasons, by holding back and storing up in said reservoirs the surplus water in times of great supply, and discharging the same in times of drought and a scarcity of water, and thereby, and by other means, improving the navigation of said Chippewa and Flambeau rivers throughout their entire length, for boats, barges, and other water-craft, and for the running, driving,

rafting, booming, storing, sorting, and delivering of logs, timber, and lumber, and other forest products, and for the purpose of improving the usefulness of said streams for all public purposes, and of diminishing the damage and injury by floods and freshets to property, both public and private, located along said waters." This constitutes legislative authorization for the presence of the dams of which plaintiff complains. But the question further arises whether it constitutes legislative authorization of the result obtaining upon the flow of the stream or streams from the operation of these dams.

The complaint alleges "that the only commercial navigation existing upon said [Flambeau] river is that of logging, and the acts of said defendant company have entirely destroyed the navigability of said river and made it impossible to float logs down said river." It further alleges that the average daily flow during April and May for eleven years past, with the exception of 1925–26, according to the United States Gauging Station near Butternut, Wisconsin, has been 1391.54 second feet; that during April and May in the years 1925–26, by reason of the operation of said dams, the defendant limited the flow of said stream to 150 second feet, which was entirely inadequate for the floating of logs on said stream.

These allegations tend to indicate that navigation has been entirely destroyed on this stream, and we might be prompted to inquire whether the state may, by virtue of its trust powers over the navigable waters of the tributaries of the Mississippi river, entirely destroy navigation therein, were it not that by reference to ch. 640, Laws of 1911, constituting the defendant's authority to construct and maintain the dams, we find the legislative purpose to be to improve and not to destroy navigation, and, especially, to improve the navigation of said Flambeau river for the running, driving, rafting, booming, storing, sorting, and delivering of logs,

timber, and lumber, and other forest products. This plainly indicates that the legislative purpose was to promote and not destroy navigation. According to the allegations of the complaint, the results obtaining from the operation of the dams are exactly contrary to those which were intended to be promoted by the grant. The grant of power was for the purpose of improving the navigability of the Flambeau river for driving logs, but, as the dams have been operated, the navigability of the river for that purpose is entirely destroyed. That this result has not been obtained pursuant to law is negatived by the allegation of the complaint that the withholding of the water was not done pursuant to the order or approval of the Railroad Commission. We hold that the complaint states a cause of action and that the demurrer should have been overruled.

Whether the complaint states a cause of action on the ground that the majority of stock of said defendant company is owned and controlled by the Northern States Power Company, another Wisconsin corporation, the majority stock of which is owned and controlled by a foreign corporation known as H. M. Byllesby & Company, or its subsidiary, Standard Gas & Electric Company, which said foreign corporation controls, dominates, and operates the said Chippewa and Flambeau Improvement Company, we do not now decide.

*By the Court.*—Order reversed, and cause remanded with instructions to overrule the demurrer.

A motion for a rehearing was denied, with $25 costs, on April 2, 1929.