Cannon, Guardian, Appellant, vs. Berens and others, Respondents.

*November 9—December 7, 1943.*

272

The cause was submitted for the appellant on the briefs of *Claude G. Cannon* of Appleton, and for the respondents on the brief of *Allan C. Cain* of Kaukauna.

FRITZ, J.   In so far as pertinent here it suffices to note the following facts which are alleged in the complaint and have not been denied by the defendants, Berens, Ditter, and Leavitt and wife, upon whose motion the court entered the order dismissing the action which is under review on this appeal.   Since January 24, 1941, plaintiff, C. G. Cannon, has been the guardian of the person and estate of Mary Welter, an insane incompetent; and as such guardian he has been duly authorized by an order of the county court of Outagamie county to commence and prosecute this action.   That court in June, 1928, appointed as guardian of the person and estate of Mary Welter, an insane incompetent, Lillian Lambie who duly filed in the county court her bond as guardian; and, upon the death of the surety on the bond, a second guardian's bond for $2,000, with the defendants Berens and Ditter as sureties, was filed and approved by the county judge on June 7, 1932.   Lillian Lambie died in February, 1937, and because she had been ill and incapacitated her son, the defendant William J. Lambie, handled for her the guardianship affairs, and he was in fact the acting or *de facto* guardian of the ward during practically all of the time his mother was the appointed guardian; and until and after her death.   The only account and report made by Lillian Lambie as guardian was filed in the county court on January 31, 1929; and therein she reported that she had $583.42 belonging to her ward, that her disbursements therefrom were $115.92, and that $467.50 were left in her hands as guardian.   The ward also owned real estate consisting of a house and two lots in Kaukauna and valued at more than $3,000, which the plaintiff is informed and believes was dis-

posed of by Lillian Lambie; that the consideration received therefor or the manner in which the real estate was sold is unknown to plaintiff, but he has been informed and believes that it was not legally sold and that the proceeds derived therefrom were less than the full sale value, and have never been accounted for to the county court by any one. In April, 1932, a special proceeding for the guardian's sale of the real estate was instituted in the county court in the name of Lillian Lambie as guardian, and in that proceeding another bond for $2,000, in the usual form used in such matters, and executed by her as guardian and by Ditter and Berens as sureties, was filed and approved by the county judge on June 14, 1932. Plaintiff is informed and believes that on that date Lillian Lambie executed a guardian's deed conveying her ward's real estate to the defendants Leavitt and wife; and defendants claim that the consideration for such deed was $1,750, but no consideration whatever is stated in the recorded copy thereof in the register of deeds' office. No order confirming such sale has ever been made or entered in the county court. It appears in the records in the register of deeds' office that Leavitt and wife conveyed the premises to defendants John B. Eimmerman and wife on January 22, 1937, for $3,350, and that the premises are subject to a mortgage of $3,350, held by defendants Viola and Anna Wolf. Plaintiff is informed and believes all of the proceedings in such guardian's sale of the real estate are illegal and void, and that neither Leavitt and wife, Eimmerman and wife, nor the mortgagees have ever acquired any valid interest, rights, liens, or claim thereto as against the ward. Since the guardian's report filed on January 31, 1929, no other report was made by the guardian Lillian Lambie to the county court, or by William J. Lambie, as acting or *de facto* guardian, and there is nothing in the county court's files to show how much money or property was received or handled by Lillian Lambie or by William J. Lambie, or as to disbursements made therefrom. However, William J. Lambie has personal knowl-

edge of and concerning the ward's moneys and property, and pretends to know the whereabouts, disposition, and handling thereof by his mother as the legal guardian, and in August, 1938, he petitioned the county court that her guardian's account be closed up, and that $200 of the guardianship funds on hand be retained for the burial expense of incompetent upon her death, and that the balance thereof be turned over to the Wisconsin department of public welfare. It is alleged in the petition that there remain on hand in bank accounts in the name of Lillian Lambie, as guardian of Mary Welter, $722.34 in the Farmers & Merchants Bank, $305.30 in the Bank of Kaukauna, and $91.16 in a segregated trust certificate upon which payments of six dividends are awaiting the guardian to cash them; and that the Wisconsin department of public welfare claims to have due it $4,177.85 for amounts owing to the Winnebago State Hospital and two county asylums. Upon that petition the county court, in January, 1939, ordered a hearing be had for the examination and allowance of the final account of Lillian Lambie and the distribution of the ward's funds; and notice therefor was published and given accordingly, but such final account was never made or filed, and there has been no such hearing or final disposition ever made of the moneys and property of the ward; and the amount and disposition thereof are unknown to plaintiff.

In addition, it is alleged in the complaint, upon information and belief, that Lillian Lambie as such guardian, and William J. Lambie, as acting or *de facto* guardian, received in rentals and income from the ward's property and funds and the sale of her real estate more than $3,000 plus the $467.50 reported on hand in the one account filed by Lillian Lambie, and also other moneys and property of the ward, which came into the hands of Lillian Lambie as guardian, and the control of William J. Lambie, all of which is known to the defendants, and in which they claim to have an interest, but which has never been reported or accounted for to the county court.

That Berens and Ditter, as sureties, made no effort to require an accounting by Lillian Lambie, as guardian, during her lifetime, or by her son, William J. Lambie, as to the guardianship moneys and property, or the disbursements or disposition thereof; and that such sureties are therefore guilty of negligence and legally obligated under their two bonds to respond and pay to plaintiff all of the moneys and funds due and owing by Lillian Lambie as such guardian to the ward, and plaintiff as her guardian, to the extent of their total liability of $4,000 on the two bonds. That William J. Lambie has by his acts in handling the moneys and property of the ward in behalf of the legal guardian and petitioning the county court of Outagamie county for the disposition of the remaining funds made himself personally accountable and liable for the moneys handled by him and unaccounted for in the guardianship matters; and that the other defendants, who claim to have purchased the real estate from the guardian, and to have an interest or title thereto, should also answer and account for their dealings and transactions in relation to the property.

Upon those facts plaintiff prays for judgment that defendants be required to account for all of the dealings and transactions in relation to the moneys and property of the ward, and for all consideration paid therefor and all rents, income, and moneys derived therefrom; that if upon the trial of the action it appears that the sale of the ward's real estate was illegal, or irregular and null and void, that the deed by which such real estate was conveyed by the guardian to Leavitt and wife, and by them reconveyed to Eimmerman and wife, be declared null and void, canceled, and set aside, and that the present mortgage thereon be also declared null and void and set aside; and that upon completing said accounting and the final determination by the court of the indebtedness owing by defendants to plaintiff, as such guardian, plaintiff have judgment against such of them as are liable therefor, with interest thereon.

The trial court's decision granting the motion of the defendants Berens, Ditter, and Leavitts for the dismissal of the action on the ground that the circuit court has no jurisdiction of the action, the subject matter thereof, or the parties, was based upon its conclusions (1) that inasmuch as there has been no accounting and determination in the county court as to all of the issues, including particularly the amount of the charges to be made against and the credits to be extended to the guardian and the amount for which the bondsmen would be liable, and as the circuit court is without the means of ascertaining such items and charges and credits unless it were to take over the files and records of the county court and proceed with an accounting, which would be improper, there is nothing which presently can constitute the basis of the action in the circuit court and therefore it is untimely in respect to the sureties; and (2) that as the sale, which was made or attempted to be made, was subject to the approval of the county court, the sale and the supervision thereof remain in that county court, and if the purchasers failed to get good title, then the county court is the one to rectify the error; and this action in circuit court is an attempt to collaterally attack that which on its face appears to be a sale approved by the county court, which had jurisdiction.

In respect to those conclusions and respondents' arguments in support thereof on this appeal, it is contended by plaintiff that under the following provisions in secs. 321.02 and 321.07, Stats., the circuit court has jurisdiction of this action brought by the successor guardian, C. G. Cannon, on behalf of the incompetent ward against Berens and Ditter as sureties on the bond of the guardian, Lillian Lambie, who is deceased and had failed to account and was in default, to wit:

"Sec. 321.02 . . . (1) . . . Actions may be brought on the bonds of executors, administrators, guardians and testamentary trustees, with permission of the county court, . . .

"(c) By any creditor, heir, legatee or other person aggrieved by any maladministration, when it shall appear that the executor, administrator, guardian or trustee has failed to perform his duty in any other particular. . . .

"(4) . . . No accounting shall be necessary before bringing an action against sureties when the guardian, administrator, executor or trustee shall die or remove out of the state or shall become incompetent."

"Sec. 321.07    Claims for damages on account of the breach of the conditions of any bond may be prosecuted by any executor, administrator, testamentary trustee or guardian in behalf of those he may represent in the same manner as by persons living and of full age. . . ."

In addition plaintiff contends that to recover for the guardian's default under the second bond executed by the defendant sureties on the application under secs. 296.07 and 296.08, Stats., to sell the ward's real estate, this action can be maintained in the circuit court under the following provision in the latter section in relation to such a bond, to wit:

Sec. 296.08 (3) "In case of the breach of the conditions of such bond, it may be prosecuted for the benefit of the party injured without any direction therefor."

Plaintiff's contentions in those respects must be sustained. In view of the facts alleged in the complaint, as stated above, it certainly appears that there has been a gross breach of duty and maladministration in the conduct of the guardianship assumed by Lillian Lambie and a consequent breach of each of the bonds for $2,000 which she gave as principal, with the defendants Berens and Ditter as sureties, in the guardianship proceedings and in the subsequent special proceedings on the guardian's application to sell the ward's real estate.    To recover the loss and damages sustained by reason of such maladministration and the breach of the bonds in question the ward, if she were not incompetent, would be authorized by sec. 321.02 (1) (c), Stats., to maintain an action against the sureties on the bond; and as she is still under guardian-

ship, C. G. Cannon as her present guardian is authorized by sec. 321.07, Stats., to maintain such an action on her behalf against the sureties.

And as the original guardian, Lillian Lambie, is deceased, there is applicable to this action brought,—with the permission of the county court granted under sec. 321.02 (1), Stats.,—by the present guardian on behalf of the ward against the sureties on the deceased guardian's bond, the provision in sec. 321.02 (4), Stats., that "No accounting shall be necessary before bringing an action against sureties when the guardian . . . shall die or remove out of the state or shall become incompetent." Consequently no prior accounting in the county court is necessary before bringing this action in the circuit court, and the fact that on the trial of the issues therein there may be involved files and records of the county court does not prevent the exercise of the jurisdiction of the circuit court in respect to the action. In so far as such files and records are involved, the issues can be readily determined in the circuit court upon competent proof as to such matters by certified copies or otherwise, as in all other cases in which such matters are material.

Neither can the action be considered an attempt to collaterally attack in the circuit court that which on its face appears to be a sale of the ward's real estate with the approval of the county court. Under the facts alleged there does not appear to have been anything filed or done in the county court in respect to any application authorizing the sale of the real estate other than the filing and approval of the bond for $2,000 required under sec. 296.08, Stats. Furthermore there is involved herein, in addition to an accounting in relation to the deceased guardian's transactions, the recovery of the loss, sustained by her defaults, from the sureties on her bond, and there is also sought the discovery as to what became of the ward's money and property, and the income therefrom, and for the recovery of losses in relation thereto, by reason of the

transactions of William J. Lambie and the other defendants, who claim any right in the ward's property under deeds sought to be set aside in this action.

In view of the numerous transactions, circumstances, and parties involved, and the necessity of avoiding a multiplicity of suits, the county court cannot afford as adequate, complete, and efficient a remedy as the circuit court can in this action in equity, and therefore the circuit court should assume jurisdiction. As considerable of the relief sought could not be adjudged in the guardianship proceedings in the county court, the objection that the circuit court is without jurisdiction cannot be sustained even though the county court may have jurisdiction to afford part of the relief as between some of the parties. *Milwaukee v. Drew,* 220 Wis. 511, 535, 265 N. W. 683. It follows that the order under review must be reversed.

However, in this connection it should be noted that in the title of the action there should have been designated as the plaintiff, Mary Welter, an incompetent, by C. G. Cannon, her guardian; and likewise in allegations and the prayer for judgment in the complaint the ward instead of the guardian should have been designated as the person entitled to the relief sought under the facts alleged. *Gleixner v. Schulkewitz, ante,* p. 169, 11 N. W. (2d) 500, and cases there cited.

*By the Court.*—Order reversed, and cause remanded for further proceedings consistent with this opinion.