BURKE, Appellant, v. MILWAUKEE & SUBURBAN TRANSPORT CORPORATION, Respondent.

*No. 333.   Argued June 6, 1968.—Decided June 28, 1968.*
(Also reported in 159 N. W. 2d 700.)

For the appellant there was a brief and oral argument by *S. A. Schapiro* of Milwaukee.

For the respondent there was a brief by *Kivett & Kasdorf,* attorneys, and *Nonald J. Lewis* and *Werner E.*

*Scherr* of counsel, all of Milwaukee, and oral argument by *Mr. Lewis.*

HEFFERNAN, J.

> *Does Transport Corporation's discharge of a*
> *passenger onto the street, rather than within*
> *stepping distance of the curb or sidewalk,*
> *constitute negligence at common law*

We agree with the trial judge's conclusion allegation "a" is, at the most, a conclusion of law. It may not even attain that dignity, for it merely states that the place at which the passengers were discharged had not been *designated* as a proper and lawful place to discharge passengers. The plaintiff has failed to allege the relationship between the negligence alleged and the fact that the place of discharge was not designated as proper and lawful. We, however, give this allegation a liberal construction, as we are permitted to do by sec. 263.27, Stats.,[2] and, relating allegation "a" to allegation "b," conclude that plaintiff is alleging the breach of a common-law duty requiring a transport company to stop its bus at a distance from the curb that permits an alighting passenger to step directly onto the curb without first stepping into the street. This is the interpretation given that allegation by the appellant in her brief and in oral argument. While we do not commend the averment as a recommended pleading, we adopt the plaintiff's contention for discussion purposes only. We are satisfied that so interpreted, the allegation fails to state a cause of action.

---

[2] Sec. 263.27, Stats., provides:
"263.27 **Pleadings liberally construed.** In the construction of a pleading for the purpose of determining its effect its allegations shall be liberally construed, with a view to substantial justice between the parties."

There is no such common-law duty under the Wisconsin law.

In *Schultz v. Kenosha Motor Coach Lines* (1950), 257 Wis. 21, 42 N. W. 2d 151, the plaintiff was injured while alighting from a bus that was stopped six or eight feet from the curb, and the step down to the street was 13½ inches, while, had the passenger been discharged at the curb, the step down would have been only 7½ inches. This court therein held that there was no duty to discharge passengers only within a distance (both as to height and linear position) from which they could readily step directly onto the curb or sidewalk. The only common-law duty the *Schultz Case* expressed was the duty to furnish a safe place to alight. The court said:

"The practice is to stop over the curb, but there appears to be nothing in the law requiring it. . . .
"The defendant provided a safe place to alight."

In *Reque v. Milwaukee & Suburban Transport Corp.* (1959), 7 Wis. 2d 111, 113, 95 N. W. 2d 752, 97 N. W. 2d 182, it was alleged that the defendant's driver was negligent:

" '. . . in failing to properly park and position his bus in relation to the curb of the sidewalk so as to enable the plaintiff to safely alight and more particularly in parking at an excess distance from the curb making it impossible for plaintiff to step . . . to the curb . . . .' "

Faced with this pleading, this court relied upon *Schultz* to hold that the mere fact of an excess distance between the bus exit and the curb did not spell out a cause of action for negligence—that mere distance to the curb did not make the place of alighting unsafe.

*Schultz* and *Reque* are dispositive of plaintiff's claim that she has a cause of action at common law for negligence. She does not. *Schultz* also disposes of the alleged claim of negligence appearing in allegation "c," for it is made clear therein that the mere height of the bus exit

(at least within the factual limits of this case as well as in *Schultz*) above the level of the street is not probative of negligence if the place of alighting is otherwise safe. Under this state of the law there was no duty upon the driver to warn passengers of the height of the step. The demurrer to allegations "a" and "c" must be sustained.

*Was failure to discharge passenger at curb*
*as required by Milwaukee Ordinance*
*101–116 (m) negligence per se*

If plaintiff is to prevail on this appeal, her cause of action must arise as a consequence of the duties imposed upon the transport company by the ordinance. It is the law of this state that a violation of a "safety statute" constitutes negligence per se. *Farmers Mut. Automobile Ins. Co. v. Gast* (1962), 17 Wis. 2d 344, 117 N. W. 2d 347; *McAleavy v. Lowe* (1951), 259 Wis. 463, 475, 49 N. W. 2d 487.

Prosser's explanation of courts so holding is that:

"When a statute provides that under certain circumstances particular acts shall or shall not be done, it may be interpreted as fixing a standard for all members of the community, from which it is negligence to deviate." Prosser, *Law of Torts* (hornbook series, 3d ed.), p. 191, sec. 35.

The principle on which such judicial conduct is based is that to impose tort liability for conduct that is denominated by the legislature as criminal is:

". . . to further the ultimate policy for the protection of individuals which they find underlying the statute, and which they believe the legislature must have had in mind." Prosser, *supra,* page 193.

Thus, it is important that the legislative intent be clear, and courts must use restraint to limit the purpose of the legislation to the same purpose intended by the

legislature. In finding conduct to be negligence per se, a court should not go beyond the policy established by the legislature or, as in the instant case, the city council.

Guidelines to thus limit the application of a criminal statute in determining standards of conduct are set forth in the Restatement, 2 *Torts* 2d, p. 25, sec. 286, and p. 29, sec. 288, and are quoted at length in *Kalkopf v. Donald Sales & Mfg. Co.* (1967), 33 Wis. 2d 247, 254, 147 N. W. 2d 277.

Our court has summarily stated the determining principle in *Delaney v. Supreme Investment Co.* (1947), 251 Wis. 374, 380, 29 N. W. 2d 754:

". . . statutes are not to be extended so as to impose any duty beyond that imposed by the common law unless such statute clearly and beyond any reasonable doubt expresses such purpose by language that is clear, unambiguous, and peremptory."

Guided by this principle, this court has narrowly construed the legislative intent of various statutes and ordinances and has limited the persons protected and the hazards protected against to the intendment of the statute. *See, e. g., Meihost v. Meihost* (1966), 29 Wis. 2d 537, 139 N. W. 2d 116; *Szafranski v. Radetzky* (1966), 31 Wis. 2d 119, 141 N. W. 2d 902; *Kalkopf v. Donald Sales & Mfg. Co.* (1967), 33 Wis. 2d 247, 147 N. W. 2d 277; *Blanchard v. Terpstra* (1967), 37 Wis. 2d 292, 155 N. W. 2d 156; *Reque v. Milwaukee & Suburban Transport Corp.* (1959), 7 Wis. 2d 111, 95 N. W. 2d 752, 97 N. W. 2d 182.

We thus look to the ordinance that plaintiff urges sets the standard of conduct to determine whether its applicability is clear beyond a reasonable doubt, expressed in language that is clear, unambiguous, and peremptory.

The ordinance is quoted *in extenso* in the statement of facts. The pertinent portion, upon which the plaintiff relies, provides:

"When the above mentioned minimum distances exist at a properly located loading zone the bus or trackless

trolley shall stop in such a manner that any person alighting therefrom or boarding thereon shall be able to board or alight from said bus or trackless trolley directly from the sidewalk or curb line without entering on or upon the public highway . . . ."

The mere reading of the ordinance poses questions of its applicability. Its effect is conditioned upon there being a parking spot of a "minimum distance" (length). The complaint is silent, and we do not know whether that condition is met. Moreover, the ordinance is applicable only "at a properly located loading zone"—yet, the complaint states that the passengers were discharged at a place not "proper and lawful." *Arguendo,* we will assume that the loading zone was "properly located" and the negligence, if any, was merely in failing to stop close enough to the curb. It is, however, apparent that the pertinence of the ordinance has not been alleged in the plaintiff's complaint. Passing these preliminary considerations, we reach the crucial issue. Was the ordinance designed to protect the plaintiff from the hazard actually encountered and which caused her injury? Was it designed to obviate falls caused by stepping down to the street?

In *Reque, supra,* it was alleged that failure to stop a bus within 12 inches of the curb, as required by sec. 85.19 (2), Stats., was negligence per se. This court on rehearing held to the contrary. We said the statute was passed not for the protection of boarding or alighting passengers, but was to get buses out of the lanes of traffic and over to the curb so the free flow of vehicular traffic would not be impeded. We said at page 114a:

"Such statute was enacted as a rule of the road for the purpose of insuring sufficient adequate usable highway space to vehicles traveling in the same direction as was the stopped or parked vehicle, and to prevent a collision occurring between such moving vehicle and the one stopped or parked. By the observance of the statute on the part of the operator of the stopped vehicle, such mov-

ing vehicles would not be put under the necessity of diverging from their own traffic lane in order to avoid a collision. We can perceive no legislative purpose in such statute to protect passengers in a public conveyance such as defendant's bus from any hazard other than that arising from a collision between a moving vehicle and the stopped bus. Not every violation of a statute constitutes negligence *per se.*"

Plaintiff herein urges, for two reasons, that we reach a different result here. She points out that there is another ordinance, 101–86 (1) (d) and (2) [3] that is the substantial equivalent of old sec. 85.19 (2) (a) discussed in *Reque.* This ordinance makes it punishable by a forfeiture to park or stop a vehicle more than 12 inches from the curb. Defendant's argument is that it is this ordinance that is designed to facilitate the movement of traffic and not the one urged here which plaintiff contends is designed only to protect passengers. Her logic is persuasive, but unfortunately it is not substantiated by the facts, for sec. 101–2 (43) (a) and sec. 101–2 (64) [4]

[3] Sec. 101–86 (1) (d) and (2) provides:

"(1) Upon streets where stopping or parking is authorized or permitted, a vehicle is not lawfully stopped or parked unless it complies with the following requirements:

"(d) In parallel parking, a vehicle shall be parked facing in the direction of traffic with the right wheels within 12 inches of the curb or edge of the street when parked on the right side and with the left wheels within 12 inches of the curb or edge of the street when parked on the left side. In parallel parking, a vehicle shall be parked with its front end at least two feet from the vehicle in front and with its rear end at least 2 feet from the vehicle in the rear, unless a different system of parallel parking is clearly indicated by official traffic signs or markers.

"(2) No person shall stop or leave a vehicle standing in violation of this section."

[4] Sec. 101–2 (43) (a) provides:

" 'Parking' means the stopping or standing of a vehicle, whether occupied or not, upon a highway otherwise than

"(a) temporarily for the purpose of and while actually engaged in loading or unloading, . . ."

of the Milwaukee Code of Ordinances expressly makes the "parking" and "stopping" provisions of that ordinance inapplicable to the loading or unloading of passengers.

Plaintiff also argues that the ordinance here is unlike the statute in *Reque,* for the reference there was to where *vehicles* were to stop. The distances were prescribed to the inch, and plaintiff does not quarrel with the court's decision in *Reque* that the purpose of the legislation therein was to expedite the free flow of traffic. In this case she points out that the ordinance is not concerned with the vehicle or the distance from the curb per se, but rather it is concerned with the passenger and his ability to reach the curb without first stepping into the street. She argues that two hazards are thus guarded against as a matter of legislative policy—injuries from vehicles (bicycles and motorcycles) that would otherwise intrude between the curb and bus and injury from the abrupt descent from the relatively great height (as compared to stepping to the curb) from the bus step to the street.

The position taken by the plaintiff is rationally arguable. It accords with the high duty of care that Wisconsin expects common carriers to exercise toward their passengers. The imposition of such a rule by the legislature would neither be unreasonably onerous nor result in an unconstitutional imposition of liability. Yet a reading of the ordinance as a whole does not convince us beyond a reasonable doubt (the test adopted in *Delaney, supra*) that the purpose of the ordinance was passenger safety on alighting, rather than passenger safety from other street-using vehicles or to prevent the delay of intra-

---

Sec. 101–2 (64) provides:

" 'Stopping' means the stopping or standing of a vehicle whether occupied or not upon a highway, otherwise than in obedience to traffic regulations or official traffic signs or signals, *or for the immediate loading or unloading of passengers.*" (Emphasis supplied.)

urban transit facilities. The ordinance is intended to provide adequate space to park buses. The amount of space to be allocated to a particular spot is made dependent upon "traffic hazard[s]" or if "excessive delays may be created." Thus, there are other obvious purposes of the ordinance. It was clearly passed to provide adequate and unobstructed bus stops to avoid delays in loading and unloading and to prevent traffic hazards. Whether it was also passed to protect the alighting or boarding passenger is not clear, although the argument made is arguably meritorious. We, however, have set a rigid test.

". . . statutes are not. to be extended so as to impose any duty beyond that imposed by the common law unless such statute clearly and beyond any reasonable doubt expresses such purpose by language that is clear, unambiguous, and peremptory." *Delaney, supra,* page 380.

No such unequivocal legislative mandate is apparent in the ordinance. We cannot, in view of the doubts that arise, attribute to the legislature (the common council) a clear intent that the imposition of civil liability in this case will implement the legislative policy. We cannot in a questionable case thus shrug off the onus of decision making to the legislative branch of the government when we have already concluded that no common-law liability exists in Wisconsin for the transport company's conduct.

The language of the ordinance in regard to the imposition of civil liability is not clear, unambiguous, and peremptory, and its violation, hence, cannot be negligence per se.

*By the Court.*—Order affirmed, with leave granted to the plaintiff to file an amended complaint within twenty days from the return of the record to the circuit court.